OPINION
{¶ 1} Appellant, Donald K. Miller, Jr., appeals from the October 1, 2002 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for burglary and attempted burglary. For the reasons that follow, we affirm in part; reverse in part, and remand this matter for further proceedings.
 {¶ 2} On May 28, 2002, appellant was indicted by the Lake County Grand Jury on one count of burglary, a second degree felony, in violation of R.C. 2911.12(A)(2), and one count of attempted burglary, a third degree felony, in violation of R.C.2923.02. On May 31, 2002, appellant filed a waiver of his right to be present at the arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} A speedy trial hearing was held on June 21, 2002. At that hearing, Cheryl DePledge ("DePledge"), a support service administrator with the Lake County Sheriff's Department ("LCSD"), testified for the state. DePledge stated that according to the Inmate Movement Log for appellant, he was incarcerated on March 28, 2002. On April 3, 2002, at 12:00 a.m., appellant was in his cell. At 12:09 p.m., appellant went to booking for his court appearance. DePledge testified that appellant was removed from the facility at 1:43 p.m. by the Kirtland Police Department ("KPD") to go to Willoughby Municipal Court, and appellant returned to his cell at 2:58 p.m. At 6:35 p.m., appellant went to the dispensary and was returned to his cell at 7:10 p.m. According to DePledge, appellant did not leave his cell again until April 8, 2002.
 {¶ 4} Officer Daniel Glenn Hess ("Officer Hess"), a corrections officer with the LCSD, also testified for the state at the speedy trial hearing. While appellant was incarcerated on the within matter, Officer Hess stated that on April 3, 2002, he filled out and signed appellant's parole holder. According to Officer Hess, he did not specifically remember serving appellant personally. However, Officer Hess said, "[i]f I signed it, it was served."
 {¶ 5} Appellant, on the other hand, testified at the speedy trial hearing that he was never served with a parole holder on April 3, 2002.
 {¶ 6} Pursuant to its June 24, 2002 judgment entry, the trial court determined that appellant's rights were not violated and the matter was set for a trial by jury, which was scheduled for August 8, 2002.
 {¶ 7} On August 6, 2002, appellant filed a motion to dismiss for failure to comply with the speedy trial requirements, which was denied by the trial court. Also, appellant filed proposed jury instructions, prior to trial, which namely sought to have the jury instructed with respect to count one, burglary, on the lesser included offenses of attempted burglary and criminal trespass, and with regard to count two, attempted burglary, on the lesser included offense of criminal trespass.
 {¶ 8} The matter proceeded to a jury trial, which commenced on August 8, 2002. At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion which was again overruled by the trial court.
 {¶ 9} Appellant's request for jury instructions on the lesser included offenses was denied. On August 9, 2002, the jury returned a verdict of guilty on both counts. According to its August 14, 2002 judgment entry, the trial court deferred sentencing until September 19, 2002, and referred the matter to the Adult Probation Department for a presentence investigation and report, victim impact statements, and a drug and alcohol evaluation.
 {¶ 10} On August 15, 2002, appellant filed a motion for new trial pursuant to Crim.R. 33, as well as a motion to set aside the verdict and enter judgment of acquittal pursuant to Crim.R. 29. The state filed responses to appellant's motions on August 28, 2002. On August 30, 2002, the trial court denied both of appellant's motions.
 {¶ 11} The following facts were revealed at trial. On March 28, 2002, Ralph, a self-employed attorney who works out of his residence in Kirtland, Ohio, was at home working when he heard a loud, pounding knock on his front door. According to Ralph, he opened his door and saw appellant, who appeared disheveled and inebriated. Ralph testified that "[appellant] seemed startled. [Appellant] just seemed like he didn't expect anyone at the front door." At that time, appellant asked Ralph for directions to the highway. Ralph stated that he told appellant to take a left-hand turn out of his driveway and drive about two miles north to Interstate 90.
 {¶ 12} Ralph testified that he then observed appellant get into the passenger's side of a van, which turned right out of his driveway rather than left, contrary to Ralph's clear directions. Ralph stated that the van headed south instead of north and pulled into the very next driveway of his neighbor's home. Because Ralph was curious, he said that he saw appellant exit the van, walk to the front door of his neighbor's house, and pound on the door. Ralph testified that he knew that the homeowners ("the neighbors"), Neil and Jill, were not at home because they both work during the day, and he continued to observe what was going on. According to Ralph, after appellant pounded on the neighbors' front door and received no response, he went back into the van, which pulled behind the neighbors' home, beyond Ralph's view. Therefore, Ralph stated that he went outside to get a better look and noticed the van parked in front of the neighbors' garage, which is located in the back of the neighbors' house. Finding this activity suspicious, Ralph called the KPD.
 {¶ 13} Approximately five minutes later, officers from the KPD arrived at Ralph's residence. Ralph stated that he ran outside to tell the police that the suspects were next door. The officers then drove to the neighbors' residence. From his property, Ralph observed the police approach the front of the neighbors' home. Ralph testified that he then saw two males exit the rear of the neighbors' house and quickly walk toward Ralph's barn. Ralph then yelled to the officers to tell them where the men were. According to Ralph, the officers then drew their weapons and ordered the men to the ground.
 {¶ 14} Officer Donald P. Prib ("Officer Prib"), an officer with the KPD, was the first officer dispatched to the scene. Officer Prib testified that he observed two males exit the rear of the neighbors' residence and he ordered them to stop. According to Officer Prib, one of the men, Mr. Filippi ("Filippi"), the driver of the van, complied; however, the other man, appellant, had to be ordered about five or six times before he stopped.
 {¶ 15} Officer Charles G. Tercek ("Officer Tercek") arrived at the scene about thirty seconds after Officer Prib. Officer Tercek also testified that he saw two males running from the rear of the neighbors' residence. Officer Tercek stated that appellant was running and finally stopped by Ralph's barn, after he ordered him numerous times to halt. Both Filippi and appellant were then apprehended.
 {¶ 16} With respect to the neighbors' residence, Officer Prib testified that he never entered the home, but noticed that the rear door was "booted" or kicked in. According to Officer Tercek, upon entering the neighbors' home, he observed that the rear door was open and the frame around the door had been broken away from the wall. Just inside that door, there were a number of items stacked up, which included stereo equipment, CDs, a DVD player, a big jar of change, and pillowcases. Officer Tercek also noticed footprints on the floor.
 {¶ 17} Officer James W. Fisher ("Officer Fisher") and Officer Ronald K. Andolsek ("Officer Andolsek") were also at the scene on the day at issue. Officer Fisher testified that he was the third officer to arrive at the neighbors' residence, during the foot pursuit. Officer Andolsek arrived next and also observed the broken door frame and the numerous items stacked up on the kitchen floor by the door. Officer Andolsek testified that he noticed some foot impressions, so he dusted the floor and lifted the shoeprints with gel lifters, which were ultimately sent to the crime lab. Officer Fisher stated that after Filippi and appellant were taken into custody, he obtained appellant's shoes, which were brand name B.U.M.'s, size eight and a half.
 {¶ 18} David A. Green ("Green"), trace evidence examiner at the Lake County Crime Lab, examined the gel lifters and appellant's shoes. Green testified that the class characteristics, the shape, and the pattern and design of appellant's size eight and a half B.U.M. brand shoes were similar to the lift obtained from the neighbors' floor.
 {¶ 19} Neil, Ralph's neighbor, testified for the state. According to Neil, both he and Jill work outside of their home, but occasionally stop in during the day. On the day at issue, Neil said that he locked the door in the morning when he left for work. Neil also stated that the items stacked by the rear door were not in that location when he and Jill left for work. Neil testified that those items were located that morning when they left in various places throughout their home, including upstairs. Further, Neil stated that his shoe size is thirteen. Neil never recalled ever seeing anyone in his house with size eight and a half B.U.M. shoes.
 {¶ 20} Pursuant to the October 1, 2002 judgment entry, the trial court sentenced appellant to eight years of imprisonment on the burglary charge, and five years of imprisonment on the attempted burglary charge, to run consecutively. The trial court determined appellant to be a parolee or releasee who violated the conditions of his parole or post-release control by virtue of the commission of a new felony, and further sentenced him to an additional one year of prison to be served consecutively to the sentence imposed for the new felonies, for a total of fourteen years. It is from this judgment that appellant filed a timely notice of appeal and submits the following assignments of error:
 {¶ 21} "[1.] The trial court committed reversible error by denying [appellant's] motion to dismiss the indictment pursuant to his statutory right to a speedy trial under R.C. 2945.71, and his constitutional right to a speedy trial under theSixth Amendment to the United States Constitution.
 {¶ 22} "[2.] The trial court committed reversible error when it refused to submit [appellant's] proposed lesser included jury instructions in violation of [appellant's] rights to due process and fair trial as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Sections 10 and16, Article I of the Ohio Constitution.
 {¶ 23} "[3.] The trial court erred to the prejudice of [appellant] when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 24} "[4.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 25} "[5.] The trial court erred by sentencing [appellant] to the maximum term of imprisonment for a felony of the second degree and the maximum term of imprisonment for a felony of the third degree.
 {¶ 26} "[6.] The trial court erred to the prejudice of [appellant] when it ordered consecutive sentences."
 {¶ 27} For the sake of clarity, we will discuss appellant's assignments of error out of order. In his first assignment of error, appellant argues that the trial court committed reversible error by denying his motion to dismiss the indictment pursuant to his statutory right to a speedy trial under R.C. 2945.71, and his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution. Appellant contends that the parole holder was not properly served. Thus, appellant concludes that he was entitled to the ninety-day triple-count provision of R.C. 2945.71(E).
 {¶ 28} "The Sixth Amendment right to a speedy trial * * * is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." UnitedStates v. MacDonald (1982), 456 U.S. 1, 8.
 {¶ 29} R.C. 2945.71 provides in pertinent part that:
 {¶ 30} "(C) A person against whom a charge of felony is pending:
 {¶ 31} "* * *
 {¶ 32} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 33} "* * *
 {¶ 34} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 35} This court stated in State v. Hubbard (1995),104 Ohio App.3d 443, 445, that: "[t]he Supreme Court of Ohio has held that the triple-count provision [pursuant to R.C. 2945.71(E)] applies only to defendants held in jail in lieu of bail solely
on the pending charge. State v. MacDonald (1976),48 Ohio St.2d 66, 70. (Emphasis sic and parallel citation omitted). As we explained in State v. Keyse (Sept. 9, 1988), 11th Dist No. 12-122, 1988 Ohio App. LEXIS 3647, at 5, `[t]he reasoning is that if the accused would remain incarcerated even after the pending charge was dropped, the [triple-count] provision should not apply.'"
 {¶ 36} We further stated in Hubbard, "a holder issued on an arrest warrant and one issued for a parole violation are different. Keyse at 8. There is no `* * * constitutional requirement that the detainee be served with the underlying notice of the charge * * * [in] the parole holder situation.' Id. at 9. A probation violation is not dissimilar. The existence of a valid probation violation holder serves to prevent the triggering of the triple-count provision. State v. Thompson (1994),97 Ohio App.3d 183." (Parallel citation omitted.) Id. at 446. See, also, State v. Brown (1992), 64 Ohio St.3d 476.
 {¶ 37} In the case at bar, appellant was incarcerated on March 28, 2002, the day of the incident at issue. A valid parole violation holder was issued by the Ohio Adult Parole Authority on April 2, 2002. Officer Hess filled out and signed appellant's parole holder on April 3, 2002. Although Officer Hess did not specifically remember serving appellant personally, he testified that, had the holder not been served, the paperwork which contained his signature would not have been filled out like it was. Officer Hess stated, "[i]f I signed it, it was served." Also, DePledge, a support service administrator with the LCSD, testified that appellant was in and out of his cell throughout the day on April 3, 2002.
 {¶ 38} Based on the foregoing, appellant, who was the only inmate incarcerated in that cell, was in his cell on April 3, 2002. As such, the evidence supports the trial court's conclusion that appellant was served with the parole holder either personally or with it deposited in his jail cell. Therefore, pursuant to Hubbard, because appellant was not held solely on the pending charges (i.e., the parole violation holder was for a separate offense), the triple-count provision under R.C.2945.71(E) is not applicable. Thus, appellant's right to a speedy trial was not violated because his August 8, 2002 jury trial was clearly within the two hundred seventy day requirement, pursuant to R.C. 2945.71(C)(2). Appellant's first assignment of error is without merit.
 {¶ 39} In his third assignment of error, appellant alleges that the trial court erred when it denied his Crim.R. 29 motion for acquittal. Appellant stresses that the state failed to prove, beyond a reasonable doubt, that he trespassed in an occupied structure, with regard to count one, or that he took a substantial step in the commission of an attempted burglary, with respect to count two.
 {¶ 40} Crim.R. 29(A) provides:
 {¶ 41} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 42} This court stated in State v. Bell (1994),97 Ohio App.3d 576, 579, "[i]t is well settled that a motion for judgment of acquittal should be granted only where reasonable minds could not fail to find reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, 264. A court cannot enter a judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v.Apanovitch (1987), 33 Ohio St.3d 19, 23." See, also, Jackson v.Virginia (1979), 443 U.S. 307; State v. Jenks (1991),61 Ohio St.3d 259.
 {¶ 43} We also stated in State v. Freeman, 11th Dist. No. 2001-A-0053, 2002-Ohio-3366, at ¶ 6: "A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence presented. * * * Upon appeal, the test for sufficiency of evidence is whether, after viewing the probative evidence and the inference drawn from it, in the light most favorable to the prosecution, any rational trier of fact could find that all of the elements of the charged offense were proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy. An appellate court cannot reverse a verdict if there exists sufficient evidence in which the jury could reasonably find that all the elements of the offenses charged were proven beyond a reasonable doubt. * * *" (Citations omitted.)
 {¶ 44} First, an examination of the probative evidence, in a light most favorable to the prosecution, demonstrates that there was sufficient evidence presented for any rational trier of fact to find all the elements of burglary, beyond a reasonable doubt. R.C. 2911.12(A)(2) governs the crime of burglary and provides that: "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 45} To recapitulate, the testimony at trial revealed that appellant and Filippi pulled a van into the neighbors' driveway. Appellant then exited the van, approached the neighbors' front door, and began pounding on the door. After receiving no response, appellant and Filippi drove around the back of the neighbors' residence. When the police arrived, Ralph saw two males exit the rear of the neighbors' home and quickly walk toward Ralph's barn. Officer Prib also testified that he observed two males exit the rear of the neighbors' home, and Officer Tercek stated that he saw two males running from the rear of the neighbors' home. After the officers ordered them to stop, Filippi, who drove the van, and appellant were then apprehended.
 {¶ 46} The police investigation revealed that the rear door of the neighbors' residence had been forcibly opened. Also, a number of items were stacked up just inside the rear door. Neil testified that those items were not in that location when he and his wife left for work that morning. In addition, according to trace evidence examiner Green, the shoe impressions lifted from the neighbors' kitchen floor had the same class of characteristics as the shoes appellant wore at the time he was apprehended.
 {¶ 47} As such, after reviewing the aforementioned testimonial evidence in a light most favorable to the prosecution, any rational trier of fact could reasonably determine that appellant did in fact burglarize the neighbors' residence. Thus, this portion of appellant's third assignment of error is not well-taken.
 {¶ 48} Notwithstanding the sufficiency of the evidence with respect to appellant's burglary conviction, the evidence presented regarding the attempted burglary charge failed to prove the essential elements, beyond a reasonable doubt. R.C.2923.02(A) governs the crime of attempt and states that: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 49} A defendant's attempted burglary conviction is supported by sufficient evidence if he vocalizes his intent to burglarize or moves a window or door to gain access to a home. See, e.g., State v. Dunlap, 10th Dist. No. 03AP-481, 2003-Ohio-6830, (holding there was sufficient evidence to support a conviction for attempted burglary when a defendant told thevictim that he was going to break in if she did not let him in, kicked the door, and attempted to open the door before the deadbolt stopped the door from opening); State v. Sams (Nov. 22, 2000), 9th Dist. No. 20063, 2000 Ohio App. LEXIS 5451, (A defendant's conviction was supported by sufficient evidence when he lifted a sliding glass door off its track, opening the door afew inches, but then abandoned any potential crime when the homeowner saw him.); State v. Anderson (July 7, 1982), 9th Dist. No. 10533, 1982 Ohio App. LEXIS 1327, (Defendant's conviction for attempted aggravated burglary was affirmed because a complainant testified that she saw defendant on her front porch and also saw him raise a bedroom window before fleeing when she yelled and screamed.).
 {¶ 50} Here, appellant's actions did not constitute a substantial step towards burglary, and reasonable minds could only find reasonable doubt. Appellant knocked on Ralph's door. He did not open a window or door without Ralph's permission. When Ralph answered the door, appellant appeared startled and asked for directions to the highway. The fact that appellant failed to follow the directions to the highway and instead burglarized a home down the street did not support a conviction of attempted burglary of Ralph's home. There were a myriad of other reasons as to why appellant failed to follow those directions. By itself, such speculative evidence does not support a conviction beyond a reasonable doubt.
 {¶ 51} Further, to convict appellant of attempted burglary, a jury would have to infer from the scenario that appellant intended to forcibly enter Ralph's home and then infer that appellant intended to commit a theft offense therein. "Although intent can be inferred from relevant circumstantial evidence, such an inference will not support a conviction if it is based on the mere stacking of inference upon inference." State v.Taylor, 7th Dist. No. 98 JE 31, 2001 Ohio App. LEXIS 498, at 7-8, 2001-Ohio-3162, citing State v. Cowans (1999),87 Ohio St.3d 68, 78. "A trier of fact may not rely on an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts. * * * A second inference may be drawn upon a previous inference if the second inference is based at least in part on additional facts." (Citations omitted.) Taylor at 8. See, also, State v. Nichols
(1996), 116 Ohio App.3d 759; State v. Ebright (1983),11 Ohio App.3d 97, 99. Accordingly, the trial court should have granted appellant's motion for acquittal as to the attempted burglary conviction.
 {¶ 52} Based upon the foregoing, the trial court properly denied appellant's motion for acquittal regarding the burglary conviction. However, appellant's motion for acquittal should have been granted with respect to the attempted burglary charge, as reasonable minds could only find reasonable doubt. Thus, appellant's third assignment of error is, in part, well-taken.
 {¶ 53} In his second assignment of error, appellant contends that the trial court committed reversible error when it refused to submit his proposed jury instructions for a lesser included offense in violation of his rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I, of the Ohio Constitution. Appellant specifically alleges that the trial court erred when it failed to present jury instructions for the lesser included offenses of attempted burglary and criminal trespass on count one, with respect to the neighbors' residence, and for the lesser included offense of criminal trespass on the second count of attempted burglary.
 {¶ 54} "The test to be applied when determining if a charge or instructions should be given on a lesser included offense is whether the jury could find against the state on an element of the crime charged, yet find for the state on the remaining elements which would be sufficient to sustain a conviction on a lesser included offense. If the jury can reasonably find that the state failed to prove one element of the charged offense beyond a reasonable doubt but that the other elements of the offense were proven beyond a reasonable doubt, thus sustaining a conviction on a lesser included offense, a charge on the lesser included offense is required. However, `if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required but is also improper.' State v. Kilby (1977), 50 Ohio St.2d 21, 24-25[.]"State v. Houseman (1990), 70 Ohio App.3d 499, 506.
 {¶ 55} In State v. Deem (1988), 40 Ohio St.3d 205, at paragraph two of the syllabus, the Supreme Court of Ohio stated that: "[a]n offense is an `inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements. (R.C. 2945.74 and Crim.R. 31(C), construed.)" The Court further stated, "[a]n offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (State v. Kidder (1987),32 Ohio St.3d 279, * * *, modified.)" Id. at paragraph three of the syllabus.
 {¶ 56} The concept of lesser included offenses is recognized by R.C. 2945.74 and Crim.R. 31(C). In particular, R.C. 2945.74
provides, in almost identical language as Crim.R. 31(C), that: "[w]hen the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."
 {¶ 57} In the case sub judice, the trial court stated that: "I'm not going to give any lesser included offenses on either charge. I think that it's actually more beneficial to [appellant] not to give a criminal trespass. That's the only lesser included of both attempted burglary or burglary. And if [the jury] can't find [appellant] guilty of the original charges, then he doesn't deserve to be charged with criminal trespass. It only invites a compromised verdict. BE is not a lesser included offense of the * * * offenses charged in this case and either a jury can * * * find burglary on the [neighbors] or not. But it * * * can't be considered an attempted burglary since there is uncontradicted testimony that somebody other than the neighbors was inside the house and piled up property. So that the BE — I mean, the burglary was complete with breaking the plane of the occupied structure."
 {¶ 58} With respect to count one, burglary and criminal trespass meet the threepart test pursuant to Deem and constitute lesser included offenses of burglary. Also, with regard to count two, criminal trespass meets the Deem test and constitutes a lesser included offense of attempted burglary. However, an instruction on a lesser included offense is not automatically given. "A criminal defendant is entitled to a lesser-included-offense instruction * * * only where the evidence warrants it." Kidder at 280.
 {¶ 59} There is evidence in the case subjudice which clearly suggests that appellant did in fact burglarize the neighbors' residence. Based on Kidder, the evidence in this case did not entitle appellant to jury instructions on the lesser-included offense of criminal trespass for the burglary charge, as the evidence offered by the state satisfied each essential element of burglary.
 {¶ 60} Moreover, a jury instruction on the lesser offense of criminal trespass was not required with respect to the attempted burglary charge. Pursuant to R.C. 2911.21(A)(1), a criminal trespass is committed when a person "[k]nowingly enter[s] or remain[s] on the land or premises of another[.]" Under appellant's third assignment of error, we held that there was insufficient evidence as to the attempted burglary conviction to prove, beyond a reasonable doubt, that appellant intended to commit a burglary or that appellant took a substantial step towards committing a theft offense. Evidence of appellant knocking at Ralph's door and looking surprised failed to satisfy the state's burden. Because there was no evidence to indicate appellant's motive for being at Ralph's residence, a jury instruction regarding criminal trespass was not warranted.
 {¶ 61} In conclusion, although criminal trespass is a lesser included offense of burglary and attempted burglary, the evidence produced at trial did not warrant a jury instruction as to either charge. Appellant's second assignment of error is without merit.
 {¶ 62} In his fourth assignment of error, appellant argues that the trial court erred when it returned a verdict of guilty against the manifest weight of the evidence. Appellant alleges that the testimony at trial did not establish that he committed burglary or attempted burglary. Appellant stresses that the state failed to prove that he trespassed in an occupied structure or that he took a substantial step in the commission of an attempted burglary.
 {¶ 63} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 64} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 65} "* * *
 {¶ 66} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 67} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 68} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
 {¶ 69} R.C. 2911.21(A)(1) governs criminal trespass and provides that: "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]"
 {¶ 70} R.C. 2909.01(C) states that: "`[o]ccupied structure' means any house * * * to which any of the following applies:
 {¶ 71} "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
 {¶ 72} "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
 {¶ 73} "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
 {¶ 74} "(4) At the time, any person is present or likely to be present in it."
 {¶ 75} In the instant case, as previously addressed, the testimony of Ralph, Officer Prib, Officer Tercek, the neighbors, and Green, was credible to show that appellant burglarized the neighbors' residence. Furthermore, the testimony at trial established the neighbors' residence was an occupied structure. Based on the overwhelming evidence presented, considered in its totality, it was reasonable for the jury to conclude that appellant did in fact burglarize the neighbors' residence, which was an occupied structure pursuant to R.C. 2901.01(C). Therefore, based on Schlee and Thompkins, the jury did not clearly lose its way in convicting appellant on the burglary charge. Thus, appellant's fourth assignment of error is not well-taken
 {¶ 76} However, our holding under appellant's third assignment of error renders his manifest weight argument regarding the attempted burglary conviction moot. We previously determined that the trial court erred in denying appellant's motion to acquit the attempted burglary charge. Thus, this portion of appellant's fourth assignment of error is moot.
 {¶ 77} Likewise, appellant's fifth and sixth assignments of error, which challenge the validity of the trial court's sentence, are also moot. Based upon our analysis of appellant's third assignment of error, appellant should have been acquitted of the attempted burglary charge pursuant to Crim.R. 29(A). Accordingly, we are required to remand this matter for re-sentencing in accordance with our decision. Thus, any assigned error relating to the court's original sentence has been rendered moot.
 {¶ 78} Based upon the foregoing analysis, appellant's first and second assignments of error are without merit, while his fifth and sixth assignments of error are moot. Appellant's third assignment of error is without merit regarding his contentions to the burglary conviction; however, his third assignment of error is with merit as to the attempted burglary charge. Appellant's fourth assignment of error is without merit with respect to his manifest weight arguments to the burglary charge and his remaining contentions relating to the attempted burglary charge are moot. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
O'Neill, J., concurs, Ford, P.J., dissents with Dissenting Opinion.