JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Timothy Dailey, appeals his conviction and sentence for attempted burglary.
 {¶ 2} At trial, Betty Keys testified that at approximately 9:30 a.m. on June 20, 2006, she observed a blue car illegally parked in front of her house. She then saw a man walk across her front yard, open the screen door on the side of her house, and begin pounding loudly on the door. Keys assumed the man was trying to break into her home, because the pounding was extremely loud and the man did not ring the doorbell.
 {¶ 3} As Keys hid in the kitchen, she saw the same man at her kitchen window, standing on a porch swing located below the window and trying unsuccessfully to push open the screen on the window. Still hiding, Keys reached for her phone and called 9-1-1. As she waited for the police, she saw the man put his hands around his face and peer through the window. He then disappeared. Keys surmised that the man either saw her in the kitchen or realized that the window was locked. Keys testified that she never gave the man permission to be in her yard or house.
 {¶ 4} Bedford police officer Keith Collins responded to Keys' home almost immediately. As he drove down her street, he saw a male get into a blue car that was illegally parked on the street and then drive away. After Keys told him that the *Page 4 
suspected burglar had just driven away in a blue car, Collins unsuccessfully attempted to chase the car.
 {¶ 5} Kenneth Chizik, Keys' neighbor, was working in his yard that morning and saw a man across the street walking "kind of like aimlessly." He then observed the man cross the street and get into the previously described illegally parked blue car. At the police station later that day, Chizik positively identified Dailey and the car from photographs.
 {¶ 6} Bedford police detective Dennis Bergansky interviewed Keys later that morning and took photographs of the kitchen window. Upon inspection, he discovered that a brick used to keep the lid on the sandbox in Keys' backyard had been moved to the porch swing under the window.
 {¶ 7} Dailey was subsequently arrested after further investigation by Bedford police detectives. Detective Bergansky testified that when he interviewed Dailey after his arrest, Dailey first claimed that he had not been in the city of Bedford on the morning of June 20, 2006. When Detective Bergansky told Dailey that someone had seen him at Keys' house that morning, Dailey then told the detective that he had gone to the home to find a friend who used to live there. Detective Bergansky searched various records, but found no evidence that Dailey's purported friend had ever lived at Keys' address or on her street.
 {¶ 8} After the jury found Dailey guilty of attempted burglary, the trial court sentenced him to five years incarceration and a $250 fine. This appeal followed. *Page 5 
 Evidentiary Issues
 1. Sufficiency of the Evidence
 {¶ 9} Dailey first contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence to convict him of attempted burglary.
 {¶ 10} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 11} R.C. 2923.02(A) defines "attempt" broadly as "conduct that, if successful, would constitute or result in the offense." Elaborating on the statutory definition, the Ohio Supreme Court has stated that a "criminal attempt" is when one purposely does anything which constitutes a "substantial step in a course of conduct planned to culminate in the commission of the crime." State v. Group, *Page 6 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 101, citing State v. Woods (1976),48 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 12} The attempted underlying crime for which Dailey was convicted is burglary, as set forth in R.C. 2911.12(A)(1). This statute prohibits a person, "by force, stealth, or deception," from "trespassing in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense."
 {¶ 13} Dailey first argues that there was insufficient evidence that he was trespassing. He relies on Garrard v. McComas (1982),5 Ohio App.3d 179, wherein the court concluded that a person who enters someone else's property because he mistakenly thinks an acquaintance lives there is a licensee, with implied consent to enter the premises, and not a trespasser.[1]
 {¶ 14} Dailey's argument assumes that the trier of fact should have believed his statement to Detective Bergansky that he was trying to enter Keys' home because he was looking for his friend. However, on a sufficiency question, the issue is not whether the evidence should be believed but whether the evidence, if believed, is sufficient to convince the average mind of the defendant's guilt beyond a *Page 7 
reasonable doubt. In considering this question, the evidence is construed in a light most favorable to the State. Jenks, supra at 273.
 {¶ 15} The State's evidence was that Dailey changed his story, and asserted that he was looking for his friend at Keys' house, only after Detective Bergansky told him that someone had seen him at Keys' house the morning of the incident. Detective Bergansky testified further that he was unable to find any evidence that Dailey's purported friend ever lived at Keys' address or on her street. This testimony, coupled with Keys' testimony that she had never given Dailey permission to be in her yard or her house, is sufficient, if believed, to convince the average mind that Dailey was trespassing.
 {¶ 16} Dailey next argues that the evidence was insufficient to support his conviction, because the State failed to present evidence that he intended to commit a theft offense in Keys' home. This argument is significant, because the trial judge specifically instructed the jury that the criminal offense Dailey intended to commit in Keys' home was theft. Thus, to support Dailey's conviction, the State was required to produce evidence that he intended to commit a theft offense in Keys' home.
 {¶ 17} Since the intent of an accused is only in his mind and not ascertainable by another, it must be determined from the surrounding facts and circumstances. State v. Flowers (1984), 16 Ohio App.3d 313, overruled on other grounds, State v. Fontes, 87 Ohio St.3d 527,2000-Ohio-472. It is admittedly difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended *Page 8 
before he commits any overt act inside the structure. Nevertheless, in the absence of circumstances giving rise to a different inference, "there is a reasonable inference that one who forcibly enters a dwelling * * * does so with the intent to commit a theft offense * * *."Flowers, supra at 315. "Persons do not ordinarily forcibly enter a dwelling being occupied by others unless there is an intent to commit a crime, the most likely crime being a theft offense in the absence of circumstances giving rise to a reasonable inference of some other offense being the purpose of entry." Id.
 {¶ 18} This court has previously recognized this inference. InState v. Goodman (July 17, 1997), Cuyahoga App. No. 71315, for example, the defendant broke the frame on a window screen and entered a home through an unopened kitchen window, but left without taking anything or injuring anyone after he encountered a member of the household in the home. He was convicted of aggravated burglary and intimidation. On appeal, he argued that there was no evidence that he acted with purpose to commit a theft offense. This court, citing Flowers, supra, with approval, found that the circumstances gave rise to an inference that the defendant had entered the home with an intent to commit a theft offense therein and, accordingly, the trial court did not err in denying his Crim.R. 29 motion for acquittal. See, also, State v. Miller, Cuyahoga App. No. 79975, 2002-Ohio-1416 (citing the "reasonable inference" that if a suspect uses force to enter a structure, he is there to commit a theft offense); State v. Turner (Aug. 23, 2001), Cuyahoga App. *Page 9 
No. 78630 (the intent to commit a theft offense can be inferred from the fact of forcible entry, in the absence of circumstances giving rise to a different inference.)
 {¶ 19} Although the inference recognized in these cases seems to dispense with the intent element of the crime, we are nevertheless bound by their precedent. Here, the State's evidence, if believed, was sufficient to give rise to an inference that Dailey attempted to enter Keys' home intending to commit a theft offense, but left when he was unable to open the window or saw her in the kitchen. Accordingly, the trial court did not err in overruling Dailey's Crim.R. 29 motion for acquittal.
2. Photographs of the Window Screen
 {¶ 20} The State presented, and the court admitted, photographs of the window screen as State's Exhibits D and E. Keys identified the photographs as pictures of the screen that Dailey "tried to push in." The pictures were captioned "screen where entry was attempted."
 {¶ 21} Dailey contends that it was a jury question whether he was attempting to enter Keys' home and, therefore, the caption on the photographs, which stated that "entry was attempted," improperly decided the issue for the jury. Thus, in his second assignment of error, he argues that he was denied effective assistance of counsel, because defense counsel did not object to the admission of the exhibits in light of the prejudicial caption. In his third assignment of error, he contends that the trial court committed plain error in admitting the prejudicial exhibits. Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the *Page 10 
trial court. State v. Landrum (1990), 53 Ohio St.3d 107, 121. A reviewing court should not interfere with the trial court's evidentiary decisions unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. State v. Miller (Jan. 16, 1992), Cuyahoga App. No. 59696, citing State v. Hymore (1967),9 Ohio St.2d 122, 128.
 {¶ 22} We find no material prejudice here. Keys testified that State's Exhibits D and E fairly and accurately depicted the screen on the window of her house and the damage caused to the screen by Dailey. She identified State's Exhibit D as a picture "where he tried to poke the screen in." She identified State's Exhibit E as another picture of the screen "where he had pushed the screen in." Thus, the caption on the exhibits describing the pictures as "screen where entry was attempted" was consistent with Keys' testimony and offered nothing new to the jury. Therefore, the caption did not prejudice Dailey, the trial court did not abuse its discretion in admitting the photographs, and counsel was not ineffective for not objecting to their admission on this basis.
 {¶ 23} Moreover, even if admission of the photographs was error, it was harmless beyond a reasonable doubt, because the other evidence in the record in favor of conviction was so overwhelming. Where evidence has been improperly admitted, the admission is harmless beyond a reasonable doubt if the remaining evidence alone demonstrates overwhelming proof of defendant's guilt. Miller, supra, citing State v.Williams (1983), 6 Ohio St.3d 281, 290. Here, the other evidence in *Page 11 
the record, even without the photographs, overwhelmingly demonstrated that Dailey attempted to burglarize Keys' home.
3. Testimony Regarding the Modus Operandi of Daytime Burglars
 {¶ 24} On direct examintion, the prosecutor asked Detective Bergansky, "[b]ased on your experience, as a detective and officer, investigating those kind of crimes, what is the modus operandi, if you will, of a daytime burglar?"
 {¶ 25} The trial court overruled defense counsel's objection and Detective Bergansky responded, "[l]ately, we have been getting hit, the whole area, with daytime burglaries. The-the protocol for the way they do it is, the burglar will knock on the door usually, sometimes two people, they will knock on the door, ring a doorbell of a house that looks like somebody is gone, at work, or it's vacant, and, when no one answers, either the door gets booted in, or a window gets broken in, and they make entry into the house. I mean, it's common place. It happens, constantly, too often."
 {¶ 26} Dailey complains that the trial court erred in admitting this testimony, because it violated Evid.R. 404(B). We disagree.
 {¶ 27} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as *Page 12 
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 28} The Staff Notes regarding Evid.R. 404(B) state, "[e]vidence of other crimes, wrongs or acts of the accused are not admissible to show that the accused committed the crime with which he is now charged. The prosecution may not offer evidence that the accused has perpetrated earlier burglaries to prove that he committed the burglary with which he is now charged. The rule does permit the use of such evidence for other purposes. In a non-exclusive listing, the rule sets forth the purposes of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)
 {¶ 29} As the Staff Notes make clear, the rule prohibits evidence regarding other acts of the accused to show that he committed the crime with which he is charged. Detective Bergansky's testimony said nothing about any other criminal acts or burglaries by Dailey. His testimony related only to daytime burglaries in general; there was nothing specific regarding Dailey. That Detective Bergansky's testimony about the modus operandi of daytime burglars in general happened to describe how Dailey attempted to gain entry to Keys' home in this case did not make the testimony violative of Evid.R. 404(B).
4. Manifest Weight of the Evidence
 {¶ 30} Dailey also argues that his conviction is against the manifest weight of the evidence. *Page 13 
 {¶ 31} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering a manifest weight claim, a reviewing court sits as a "thirteenth juror." Id. It must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue of fact for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the jury `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 32} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."Thompkins, supra at 387.
 {¶ 33} This is not that exceptional case. Dailey's actions of pounding on Keys' door and trying to push in the window screen were substantial steps, strongly corroborative of his criminal purpose to burglarize her home. See, e.g., State v. Sams (Nov. 22, 2000), 9th Dist. No. 20063 (defendant's conviction for attempted burglary supported by the manifest weight of the evidence where he lifted a sliding glass door off its track, opening the door a few inches, but then abandoned any potential crime when the homeowner saw him); State v. Anderson (July 7, 1982), 9th *Page 14 
Dist. No. 10533 (defendant's conviction for attempted burglary affirmed where complainant testified she saw defendant on her front porch and saw him raise a bedroom window before fleeing after she yelled and screamed.) Moreover, contrary to Dailey's argument, the jury was not "misled," because, as discussed above, neither Detective Bergansky's testimony about the modus operandi of daytime burglars, nor the photographs of the window screen, were improperly admitted. Dailey's conviction for attempted burglary is not against the manifest weight of the evidence.
Jury Instructions
 {¶ 34} Dailey next argues that the trial court committed reversible error by denying defense counsel's request to instruct the jury on the lesser included offense of criminal trespass.
 {¶ 35} Under R.C. 2911.21(A)(1), which governs criminal trespass, no person, without privilege to do so, may knowingly enter or remain on someone else's land or premises. Criminal trespass is a lesser included offense of attempted burglary. State v. Miller, Lake App. No. 2002-L-162, 2004-Ohio-6342, at ¶ 58.
 {¶ 36} An instruction on a lesser included offense is not automatically required, however. "A criminal defendant is entitled to a lesser included offense instruction * * * only where the evidence warrants it." State v. Kidder (1987), 32 Ohio St.3d 279, 280. *Page 15 
 {¶ 37} "The test to be applied when determining if a charge or instruction should be given on a lesser included offense is whether the jury could find against the state on an element of the crime charged, yet find for the state on the remaining elements which would be sufficient to sustain a conviction on a lesser included offense. If the jury can reasonably find that the state failed to prove one element of the charged offense beyond a reasonable doubt but that the other elements of the offense were proven beyond a reasonable doubt, thus sustaining a conviction on a lesser included offense, a charge on the lesser included offense is required. However, `if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser included offense is not only not required but is also improper.'" State v. Houseman (1990), 70 Ohio App.3d 499, 506, quotingState v. Kilby (1977), 50 Ohio St.2d 21, 24-25.
 {¶ 38} Dailey argues that the trial court should have given the lesser included offense for criminal trespass, because the jury could have found that he did not intend to commit a criminal offense in Keys' house-one of the elements of attempted burglary-but could have found that he was merely trespassing on her property. The evidence produced at trial did not warrant this instruction, however. The evidence demonstrated that Dailey was attempting to enter Keys' home either to commit a theft, in which case he was guilty of attempted burglary, or, as was the defense theory of the case, merely to find his purported friend, in which case, he had no criminal intent, and therefore was not guilty of criminal trespass. See State v. Swartz *Page 16 
(1983), 5th App. No. CA-608 (holding that criminal intent is a necessary element of criminal trespass).
 {¶ 39} Juries are not to be presented with compromise offenses which are not sustained by the adduced facts. State v. Wilkins (1980),64 Ohio St.2d 382, 387. Because the evidence did not warrant the lesser included offense instruction, the trial court did not err in denying defense counsel's request for an instruction regarding criminal trespass.
Sentencing
 {¶ 40} Lastly, Dailey argues that the trial court erred in sentencing him to pay a $250 fine without determining his present and future ability to pay the fine, as required by R.C. 2929.19(B)(6). Dailey did not object to the fine at the sentencing hearing. As this court found inState v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675-78:
 {¶ 41} "[i]t is clear that the court should consider the impact a fine has on the offender; however, the court is required to consider such factors only if evidence is offered at the sentencing hearing. Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." (Citations omitted.)
 {¶ 42} Dailey made no objection at the sentencing hearing to the imposition of the fine and therefore has waived any objection to the fine on appeal. *Page 17 
 {¶ 43} Appellant's seven assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P. J., and MARY J BOYLE, J., CONCUR
[1] The Garrard court stated, "[a] person has implied consent, absent an express warning contrary, to approach a residence to ask for directions or to find out if she is at her friend's home. The alternative of remaining at the curb honking or hollering is not attractive." Id. *Page 1