[Cite as *State v. Jones*, 2019-Ohio-5237.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 108050 |
| GREGGORY JONES, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART
**RELEASED AND JOURNALIZED:** December 19, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-617001-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian D. Kraft, Assistant Prosecuting Attorney, *for appellee.*

Britt Newman, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Greggory Jones appeals from his convictions of felonious assault and tampering with evidence and the firearm specifications accompanying tampering with evidence. He also challenges the maximum term he received for tampering

with evidence. On appeal, he raises the following assignments of error for our review:

1. Appellant's conviction for felonious assault was not based on sufficient evidence and was against the manifest weight of the evidence.

2. Appellant's conviction for tampering with evidence was not based on sufficient evidence and was against the manifest weight of the evidence.

3. The trial court erred in sentencing appellant to serve a three-year firearm specification attached to the tampering with evidence charge due to the state's failure to prove the elements of the specification.

4. The trial court erred in sentencing appellant to serve a one-year firearm specification attached to the tampering with evidence charge since the alleged tampering rendered the firearm inoperable.

5. The trial court erred when it sentenced appellant to consecutive firearm specifications in violation of his constitutional protection against cruel and unusual punishment in violation of his right to substantive due process.

6. Appellant was denied his right to effective assistance of counsel due to the cumulative effect of counsel's errors.

7. The trial court erred in sentencing appellant to a maximum term of imprisonment on his conviction for tampering with evidence.

{¶ 2} After a careful review, we affirm Jones's convictions of felonious assault, tampering with evidence, and the one-year gun specifications accompanying his offenses, and his sentence for these offenses. We, however, find merit to the third assignment of error and, accordingly, vacate the three-year firearm specification associated with his offense of tampering with evidence.

{¶ 3} The indictment against Jones stemmed from the death of Raymond Laster. On September 15, 2016, Laster's half-naked, bullet-ridden body was found in a deserted backyard. On that same day, Jones, naked and in a PCP-induced haze, was found walking in a street, and the clothing scattered around him had Laster's blood on it. The lab test subsequently showed Laster's body to be positive for PCP as well.

{¶ 4} In connection with Laster's death, Jones was indicted for aggravated murder (R.C. 2903.01(A)), murder (R.C. 2903.02(B)), felonious assault (R.C. 2903.11(A)(1)), felonious assault (R.C. 2903.11(A)(2)), and tampering with evidence. Each of the five counts was accompanied with one- and three-year firearm specifications.

**Trial Testimony**

{¶ 5} At trial, the state presented the testimony from the police officers who investigated the shooting, the pathologist who performed the autopsy, a crime analyst specialized in cell-tower mapping, two forensic scientists, a firearm examiner, Jones's ex-girlfriend, and Laster's girlfriend. The testimony reflects that on September 15, 2016, a half-naked body was discovered in a deserted backyard on Parkview Avenue in the east side of Cleveland. The police received the call about the body around 2:40 p.m. The victim was shirtless, and his pants were pulled down. He had multiple gunshot wounds, and a 9 mm shell casing was located near the body. His cell phone and wallet were still in his possession.

{¶ 6} Sometime in mid-afternoon, the police also responded to a dispatch call indicating a man was "taking his clothes off and also possibly wielding a gun." When the police arrived, they saw a naked man getting in and out of a vehicle, a gold Chrysler, and walking around. The police found a pair of pants, a shirt, and a cell phone near him.

{¶ 7} The man, Greggory Jones, was eventually arrested without incident. The police suspected he was high on PCP because people under the influence of PCP have a tendency to take their clothes off. Jones was taken to the hospital after he was arrested, and a toxicology test showed him to be indeed high on PCP. When he awoke from his disoriented state, he told the police that people were trying to rob and kill him. A vial of PCP was later found inside the car.

{¶ 8} There was a pool of fresh blood on the front passenger seat of the Chrysler. The blood was subsequently matched to Laster's DNA. Laster's blood was also detected on Jones's shorts retrieved from where Jones was found.

{¶ 9} Although the victim sustained seven "through-and-through" shots (meaning the bullets passed through the body), no bullets were found inside the vehicle. Inside the vehicle, however, the police found a 9 mm H&K semiautomatic handgun "broken into pieces" and nine, 9 mm shell casings. The police did not perform DNA testing on the shell casings found inside the car, and the DNA testing performed on the shell casing found near the body did not produce a useful profile. However, James Kooser of the Cuyahoga County Regional Forensic Science Laboratory, a firearms examiner, testified that he compared all ten shell casings —

nine from inside the vehicle and one found near the victim's body — with the firearm found in the Chrysler. Although the firearm was missing the barrel and the side return spring, he used a loaner barrel and spring for test-firing. Kooser was able to determine that all ten, 9 mm casings were fired from the same firearm and that they were fired from the firearm found inside the vehicle.

{¶ 10} Laster, the victim, lived with his girlfriend on South Moreland Road, several blocks from Parkview Avenue where his body was found. Laster had dropped off his girlfriend at her workplace at 9:00 a.m. The last time she spoke with him was around 9:50 a.m.

{¶ 11} A detective from the police department testified regarding video footage shot from multiple camera angles covering the area outside Laster's apartment building. The footage showed that around 10:00 a.m., Laster was seen exiting his apartment building, and at 10:25 a.m., the video showed a gold vehicle pull up. The detective also testified that he was able to determine from his viewing of the video footage that Laster went inside the vehicle.

{¶ 12} A crime analyst with the Cleveland Police Department conducted cell-tower mapping of the cell phone found with Jones when he was arrested. The cell-tower records showed that sometime before 10 a.m., the cell phone was in the general area of the South Moreland Road location where Laster was last seen and the Parkview Avenue location where his body was found.

{¶ 13} The Chrysler's owner turned out to be Arruth Glass, who used to date Jones but their relationship had ceased to be romantic before the incident. She was

also the owner of the dismantled handgun found in the vehicle. The defense's theory is that Maurice Grey, Glass's younger brother, shot and killed Laster and that the bullets that killed Laster came from a different gun, not the gun found in the vehicle.

{¶ 14} Glass testified that she lived on Langley Avenue with her mother. Her brother Maurice Grey, who was 18 years old in 2016, also resided there. She worked the night shift as a security guard at Case Western Reserve University, and she kept the gun locked in the glove compartment of the vehicle. On the day of the incident, she dropped her children off at their school at 7:30 a.m. and returned to her house at 7:45 a.m. She parked her vehicle in her driveway and placed her keys, including the keys to her vehicle and the glove compartment, on the kitchen table. She then took a bath and a long nap in preparation for her night shift at the university.

{¶ 15} Sometime after noon, she was awakened by a phone call from Jones's mother about the shooting incident and saw that her vehicle was missing from her driveway. Glass testified that she did not give Jones permission to use her vehicle or the firearm in the glove compartment.

{¶ 16} Glass also testified that she had seen Jones socialize with Laster on a few occasions. Regarding her brother, Glass testified on direct examination that he was home that morning and, to her knowledge, he never left the house. She knew that because when she received the phone call from Jones's mother about the shooting, her brother was still in the same pajamas when she saw him earlier that morning. She testified that "[h]e looked like he didn't go anywhere. He was walking

around with his hair all messed up on his head. You can tell he didn't go anywhere. You could tell." She also testified she had never seen her brother with the victim.

{¶ 17} The defense did not introduce its own witnesses, but tried to link Glass's brother to the shooting during its cross-examination of Glass. She was asked if she had told a detective that, while she was taking a bath, Jones came into the house and took the keys from her brother, and she learned about it from her brother. In response, Glass testified that she remembered telling the detective that while she was taking a bath, her brother let Jones into the house but her brother did not realize Jones took the keys off the table.

{¶ 18} On redirect examination, Glass testified that she moved in with her mother after breaking up with Jones. She was in an abusive relationship with Jones, and she wanted to get away from him.

{¶ 19} At the close of the state's case-in-chief, the defense moved for an acquittal of all charges. The trial court denied the motion but granted the prosecutor's motion to amend the aggravated murder count to the lesser-included charge of purposeful murder under R.C. 2903.02(A).

{¶ 20} The defense rested without presenting its own witnesses. At closing argument, defense counsel offered its interpretation of the testimony presented at trial: that Maurice Grey, rather than Jones, was the shooter. Without elaboration, defense counsel suggested to the jury that "Maurice Grey was on the phone in the car when those [cell] towers pinged, and Greggory Jones got into the car afterwards."

**Verdict**

{¶ **21**} The jury found Jones *not* guilty of the two murder counts — under R.C. 2903.02(A) ("purposely cause the death of another") or under R.C. 2903.02(B) ("cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree"). The jury also found Jones *not* guilty of felonious assault as defined in R.C. 2903.11(A)(2) ("knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon"). The jury found him *guilty* of felonious assault as defined in R.C. 2903.11(A)(1) ("knowingly * * * [c]ause serious physical harm to another"). The jury also found him *guilty* of tampering with evidence in dismantling the firearm.

{¶ **22**} Regarding the firearm specifications in connection with felonious assault, the jury found Jones guilty of the one-year firearm specification (possessing a firearm) but not guilty of the three-year firearm specification (displaying, brandishing, or indicating the possession of the firearm, or using it to facilitate the offense). Regarding the firearm specifications in connection with tampering with evidence, the jury found Jones guilty of both the one-year and the three-year firearm specifications.

{¶ **23**} The jury verdicts were seemingly inconsistent — Jones was found not guilty of the murder counts and also not guilty of felonious assault in causing the victim physical harm by means of a deadly weapon, yet he was found guilty of felonious assault in causing the victim serious physical harm. In addition, the jury

found that, while committing the latter offense, Jones had a firearm under his possession (one-year firearm specification) but did not display or brandish the firearm, indicate he possessed the firearm, or use it to facilitate the assault (three-year firearm specification). Understandably, among the claims raised by Jones on appeal is the claim that the jury's verdicts were inconsistent, and the inconsistency reflects that the jury lost its way and, therefore, his convictions were against the manifest weight of the evidence.

**Sentence**

{¶ 24} The trial court sentenced Jones to a maximum eight-year term for his felonious assault conviction in addition to one year for the accompanying firearm specification. The court also sentenced him to a maximum three-year term for his conviction of tampering with evidence and a merged three-year term for the three-year and one-year firearm specifications accompanying tampering with evidence. His prison term totals 15 years.

{¶ 25} Jones raises seven assignments of error for our review. The first and second assignments of error concern the sufficiency and manifest weight of the evidence for his convictions of felonious assault and tampering with evidence.

**Standard of Review for Sufficiency and Manifest Weight of Evidence**

{¶ 26} When assessing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492

(1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).

{¶ 27} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**Felonious Assault**

{¶ 28} Under the first assignment of error, Jones argues his conviction for felonious assault as defined in R.C. 2903.11(A)(1) ("cause serious physical harm to another") was not based on sufficient evidence and was against the manifest weight

of the evidence. He claims there was inadequate evidence to show he was the one who fired the shots that killed Laster.

{¶ 29} Our review of the trial transcript shows the state presented evidence showing that Laster was picked up from his South Moreland apartment by a gold-colored vehicle the morning of the shooting. His half-naked body turned up in a backyard on Parkview Avenue, only several blocks away. A 9 mm shell casing was found near his body. Jones was found sometime in mid-afternoon, naked and in a PCP-induced haze, getting in and out of a gold Chrysler. Inside the vehicle, the police found a dismantled firearm and nine shell casings. The state's ballistic testing matched the firearm found inside the vehicle to the shell casings retrieved from the vehicle as well as the single shell casing near the victim's body. In addition, the victim's blood was found on the passenger seat and on Jones's shorts. The cell-tower record also supported the state's claim that Jones picked up Laster in the Chrysler and later shot him with the firearm stored in the glove compartment of the vehicle. Our review of the trial testimony indicates that the state produced sufficient evidence to support Jones's conviction of felonious assault.

{¶ 30} Regarding the manifest weight of the evidence, Jones argues that the jury "lost its way" in weighing the evidence, as reflected by the inconsistent verdicts it rendered: the jury found him *not guilty* of the murder counts and *not guilty* of felonious assault under R.C. 2903.11(A)(2) (causing another serious harm with a deadly weapon), yet found him guilty of R.C. 2903.11(A)(1) (causing serious physical harm). Jones's claim is not supported by the case law authority.

{¶ 31} It has long been settled that inconsistent verdicts between independent counts do not create a reversible error. "'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.'" *United States v. Powell*, 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus. In other words, inconsistent responses to different counts do not create inconsistent verdicts. "An inconsistent verdict may very well be a result of leniency and compromise by the jurors, rather than being caused by [jury] confusion." *State v. Fraley*, 5th Dist. Perry No. 03 CA 12, 2004-Ohio-4898, ¶ 15, citing *Powell*. This court has also observed that "the validity of a conviction does not depend on consistency between verdicts on various counts of a multiple count indictment when a jury finds the defendant guilty of one or more offenses and not guilty on others even though the difference in the verdicts cannot rationally be reconciled." *Brecksville v. Malone*, 8th Dist. Cuyahoga Nos. 75466 and 75651, 2000 Ohio App. LEXIS 587 (Feb. 17, 2000), *appeal not allowed*, 89 Ohio St.3d 1451, 731 N.E.2d 1139 (2000). *See also State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503, ¶ 16 (8th Dist.) (it must be remembered that inconsistent verdicts should not necessarily be interpreted as a windfall for the prosecution at the

defendant's expense); *State v. Taylor*, 8th Dist. Cuyahoga No. 89629, 2008-Ohio-1626 (inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt).

{¶ 32} Here, the jury acquitted Jones of murder and also acquitted him of felonious assault defined in R.C. 2903.11(B) (knowingly causing or attempting to cause physical harm to another by means of a deadly weapon) but convicted him of felonious assault defined in R.C. 2903.11(A) (knowingly causing serious physical harm to another).  In addition, although the jury acquitted him of felonious assault by means of a deadly weapon, the jury found him guilty of the one-year firearm specification (possession) but not guilty of the three-year firearm specification (displaying, brandishing, indicating the possession of a firearm, or using the firearm).  The jury could have rendered these seemingly inconsistent verdicts for any number of reasons.  While the state presented compelling evidence showing Jones to be the shooter, the jury acquitted him of the two counts of murder and felonious assault under R.C. 2903.11(B) and only convicted him of felonious assault under R.C. 2903.11(A) with a one-year, rather than three-year, firearm specification. The seemingly inconsistent verdicts were likely a product of compromise and leniency.

{¶ 33} "[I]t would be incongruous for a defendant to accept the benefits of an inconsistent verdict without also being required to accept the burden of such verdicts." *Taylor* at ¶ 10, citing *Powell*.  Consequently, the courts have consistently rejected the argument that inconsistent verdicts would render a defendant's

conviction against the manifest weight of the evidence. *See, e.g,. State v. Norman*, 10th Dist. Franklin No. 10AP-680, 2011-Ohio-2870, ¶ 14; *State v. Gravelle*, 6th Dist. Huron No. H-07-010, 2009-Ohio-1533, ¶ 76-77; *State v. Parker*, 8th Dist. Cuyahoga No. 90298, 2008-Ohio-3538; ¶ 22-25; and *State v. King*, 5th Dist. Guernsey No. 09 CA 000019, 2010-Ohio-2402, ¶ 32-34. Having reviewed the evidence presented by the state, we are not persuaded that the jury created a manifest miscarriage of justice by convicting Jones of felonious assault with a one-year firearm specification. The first assignment of error lacks merit.

**Tampering with Evidence**

{¶ 34} Under the second assignment of error, Jones claims his conviction for tampering with evidence was not supported by sufficient evidence and was against the manifest weight of the evidence. While the assignment of error raises both a sufficiency and manifest-weight claim, his argument only pertains to the sufficiency of the evidence. Specifically, he claims that the state did not present sufficient evidence to show that he had knowledge of a likely investigation at the time he purportedly dismantled the gun. Tampering with evidence is defined in R.C. 2921.12(A)(1), which states:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * *:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

{¶ 35} As the Ohio Supreme Court explained, there are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted[;] (2) the alteration, destruction, concealment, or removal of the potential evidence[; and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. A conviction for tampering with evidence under this statute necessarily requires proof that the defendant intended to impair the availability of the evidence that is related to an existing or likely investigation. *Id.* at ¶ 19.

{¶ 36} Jones argues that even if the state proved that he was the person who dismantled the gun, the state failed to prove he had knowledge of a likely investigation, an essential element of the offense of tampering with evidence.

{¶ 37} Regarding the requisite mental element, the offense of tampering with evidence as defined in R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.). When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances. *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786. Therefore, the state must demonstrate that the defendant knew that an investigation was likely at the time of concealing the evidence. Knowledge that a criminal investigation is imminent is based upon a

reasonable person standard.  *State v. Workman*, 2015-Ohio-5049, 52 N.E.3d 286, ¶ 51 (3d Dist.).

{¶ 38} Jones cites *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, to support his claim that the state must present additional evidence beyond the fact that a crime had been committed to show a defendant's knowledge of likely investigation, evidence such as the defendant taking the gun apart while the police were surrounding him, or disposing of a piece of the gun after he had been taken into custody.

{¶ 39} In *Barry,* the defendant was convicted of heroin possession and the tampering offense was the defendant's concealment of the heroin in her body cavity. The court noted that, when the defendant concealed the heroin, she had no reason to believe that the police would investigate her and there was no evidence showing that she thought it likely that she would be stopped by law enforcement.  *Id.* at ¶ 27.  On those facts, the issue before the court was "whether knowledge that an official proceeding or investigation is pending or likely to be instituted can be imputed to one who commits a crime, regardless of whether that crime is likely to be reported to law enforcement."  *Id.* at ¶ 17.  As the court explained:

> Ohio does not recognize the "unmistakable crime" doctrine in connection with the offense of tampering with evidence because that doctrine erroneously imputes to the perpetrator constructive knowledge of a pending or likely investigation into a crime; merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted.

*Barry* at syllabus.

{¶ 40} The Supreme Court of Ohio, however, subsequently limited the application of *Barry*. In *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, the defendant was charged with tampering with evidence for burning the clothes he wore during a shooting. The Supreme Court of Ohio distinguished *Barry*. Although the court continued to acknowledge that in Ohio the law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense, the court stressed that "*[a]s a matter of common sense, we can infer that a person who had shot two people and left them for dead in a residential neighborhood would know that an investigation was likely.*" (Emphasis added.) *Id.* at ¶ 116. The court held accordingly that there was sufficient evidence for tampering because the defendant knew that an official investigation was about to be or likely to be instituted. Pursuant to *Martin*, we find no merit to Jones's claim predicated based on *Barry*.

{¶ 41} Under this assignment of error, Jones also argues there is no evidence that he touched the firearm, much less took it apart. While the police could have been more diligent in its investigation, such as dusting the firearm for prints or swabbing it for DNA evidence, the lack of direct, physical evidence connecting Jones to the firearm does not render the state's evidence insufficient. The state produced circumstantial evidence to show Jones dismantled the firearm — as the police approached, he was observed to exit the vehicle where the dismantled firearm was

found. Circumstantial evidence is as probative as direct evidence. *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. The second assignment of error is without merit.

**Firearm Specifications**

{¶ 42} The third, fourth, and fifth assignments of error all concern firearm specifications associated with Jones's offense of tampering with evidence. A specification is a sentencing provision that imposes an enhanced penalty upon certain findings and is contingent upon an underlying felony conviction. *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 16. The one-year firearm specification is defined in R.C. 2941.141, and it applies when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." The three-year firearm specification is defined in R.C. 2941.145, and it applies when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 43} For his conviction of felonious assault, Jones was found guilty of the one-year firearm specification. For his conviction of tampering with evidence, Jones was found guilty of both the one-year and three-year firearm specifications. On appeal, he only challenges the firearm specifications accompanying the offense of tampering with evidence. He assigns three errors regarding these firearm specifications. Under the third assignment of error, Jones argues he should not be found guilty of the three-year firearm specification accompanying the offense of

tampering with evidence without any proof that he displayed, brandished, indicated that he possessed the firearm, or used the firearm to facilitate the tampering offense. Under the fourth assignment of error, he argues he should not be found guilty of the one-year firearm specification accompanying tampering with evidence because the tampering act rendered the firearm inoperable. Under the fifth assignment of error, he argues that the close proximity of the tampering offense to felonious assault rendered the two crimes part of a single transaction, which required the merger of the firearm specifications for these two offenses. We address these claims in turn.

### a. Three-Year Firearm Specification

{¶ 44} Under the third assignment of error, Jones argues the state's evidence was insufficient to find him guilty of the three-year firearm specification accompanying the tampering-with-evidence count. We find merit to this claim.

{¶ 45} Pursuant to R.C. 2941.145, the three-year firearm specification statute, an offender's sentence for the underlying offense is enhanced if the offender "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Therefore, in order for Jones's sentence to be enhanced with a three-year firearm specification, the state must produce evidence to show that he displayed the firearm, brandished it, indicated that he possessed it, or used it to *facilitate* the offense of tampering with evidence.

{¶ 46} There is no evidence that, in the course of dismantling the gun, Jones displayed it, brandished it, or indicated to another that he possessed it. The only

question is whether Jones "used it to facilitate the offense" of tampering with evidence under the statute. "A thing that 'facilitates' 'make[s] (an action or process) easy or easier.'" *State v. Myrick*, 2d Dist. Montgomery No. 23843, 2011-Ohio-244, ¶ 85, quoting Oxford English Dictionary Online, available at http://oxforddictionaries.com. In *Myrick*, the defendant tossed his gun when a police officer approached. He was convicted of tampering with evidence regarding the gun and a three-year firearm specification. The appellate court reversed the three-year firearm specification conviction (and remanded to allow the trial court to enter a judgment of conviction for a one-year firearm specification), reasoning that "[h]aving the gun did not make it easier for [the defendant] to conceal or remove the gun — the gun was the thing concealed or removed." *Id.* Similarly here, having the gun did not "make it easier" for Jones to dismantle the gun — rather, the gun was the very thing dismantled.

{¶ 47} Our application of the three-year firearm specification statute comports with the legislative intent behind the statute. Interpreting the statute, the Supreme Court of Ohio in *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, recognized that "'the primary goal in construing a statute is to ascertain and give effect to the intent of the legislature.'" *Id.* at ¶ 29, quoting *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 14. It determined that "[t]he purpose of a firearm specification is to enhance the punishment of criminals who voluntarily introduce a firearm while committing an offense and to deter criminals from using firearms." *Id.* at ¶ 31. Furthermore, "[i]n enacting firearm specifications,

the General Assembly recognized that 'a criminal with a gun is both more dangerous and harder to apprehend than one without a gun.'" *Id.*, quoting *State v. Powell*, 59 Ohio St.3d 62, 63, 571 N.E.2d 125 (1991).

{¶ 48} Here, by dismantling the gun, Jones made himself *less* dangerous and *easier* to apprehend. Under the guidance from the Supreme Court of Ohio, it appears unreasonable and contrary to the intent of the legislature to consider Jones's act of dismantling the gun as "using" the gun to "facilitate" the offense of tampering with evidence (the very act of dismantling the gun) when what he did was to render the gun *unusable*.

{¶ 49} We therefore conclude that the unique circumstances of this case do not support the state's claim that Jones displayed or brandished a firearm, indicated he possessed the firearm, or used the firearm to facilitate the offense under the three-year gun specification statute. Jones's sentence for tampering with evidence cannot be enhanced by the three-year firearm specification under the circumstances of this case. The third assignment of error is sustained.

### b. One-Year Firearm Specification

{¶ 50} Under the fourth assignment of error, Jones argues he should not be found guilty of the one-year firearm specification accompanying tampering with evidence because the state did not produce evidence to show that the firearm was operable at the time of the offense.

{¶ 51} The gun specification statute enhances a sentence when "the offender had a firearm on or about the offender's person or under the offender's control while

committing the offense." Furthermore, a gun "must be operable or readily rendered operable at the time of the offense in order to be a 'firearm' that would support a firearm specification[.]" *In re J.T.*, 143 Ohio St.3d 516, 2015-Ohio-3654, 39 N.E.3d 1240, ¶ 7, citing *State v. Murphy*, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990), citing *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), syllabus.

{¶ 52} Jones argues that although the state produced evidence to show that the gun was operable at the time Laster was shot, there was no evidence that the gun was operable at the time Jones committed the offense of tampering with evidence. Jones's claim lacks merit. The law is settled that the state's burden as to operability can be met by circumstantial evidence. *Gaines*. Here, the state produced evidence to establish a timeline showing that Jones committed the offense of tampering with evidence within a short time after he fired the gun at Laster. As such, the evidence is sufficient for the jury to find that the gun was operable when Jones committed the offense of tampering with evidence.

{¶ 53} We recognize that it may appear to be unfair to apply the one-year firearm specification to additionally punish Jones for being in possession of the firearm when the tampering act cannot be committed without the firearm in his possession and furthermore his tampering act destroyed the firearm. The Tenth District has addressed a similar issue in *State v. Wright*, 10th Dist. Franklin No. 09AP-207, 2009-Ohio-6773, *discretionary appeal not allowed,* 125 Ohio St.3d 1415, 2010-Ohio-1893, 925 N.E.2d 1003. In that case, the defendant hid a gun in the center console of his vehicle when the police approached because it would violate

his parole to be in possession of a gun. He was convicted of tampering with evidence for hiding the gun as well as the accompanying one-year gun specification. The defendant argued on appeal that it was fundamentally unfair for his sentence for tampering with evidence to be enhanced for a gun specification relating to the same gun.

{¶ 54} The Tenth District rejected the claim, based on the language set forth in R.C. 2929.14(D)(1)(e) (now R.C. 2929.14(B)(1)(e)), which excluded several firearm offenses from enhancement.[1] Under the statute, certain firearm offenses — carrying concealed weapons, illegal conveyance of deadly weapon or dangerous ordnance into courthouse, improperly handling firearms in a motor vehicle, illegal possession of firearm in a liquor permit premises — are not enhanceable. The offense of tampering with evidence is not one of the non-enhanceable offenses enumerated in the statute. The Tenth District, reasoning that the statute on its face

---

[1] R.C. 2929.14(B)(1)(e) states:

The court shall not impose any of the prison terms described in division (B)(1)(a) of this section or any of the additional prison terms described in division (B)(1)(c) of this section upon an offender for a violation of section 2923.12 [Carrying concealed weapons] or 2923.123 [Illegal conveyance of deadly weapon or dangerous ordnance into courthouse; illegal possession or control in courthouse] of the Revised Code. The court shall not impose any of the prison terms described in division (B)(1)(a) or (b) of this section upon an offender for a violation of section 2923.122 [Illegal conveyance or possession of deadly weapon or dangerous ordnance or illegal possession of object indistinguishable from firearm in school safety zone]that involves a deadly weapon that is a firearm other than a dangerous ordnance, section 2923.16 [Improperly handling firearms in a motor vehicle], or section 2923.121 [Illegal possession of firearm in liquor permit premises of the Revised Code].

does not prohibit enhancement by a firearm specification when the underlying felony is tampering with evidence, concluded that the court was constrained by the language of the statute and it affirmed the firearm specification. *Id.* at ¶ 32. We agree with the reasoning of the Tenth District. Without an express prohibition by the statute, Jones can be sentenced on both the tampering count and the accompanying one-year gun specification. *See also State v. Elersic*, 11th Dist. Lake No. 2000-L-145, 2002-Ohio-2945 (the defendant argued the trial court erred in enhancing his offense of receiving stolen property involving a firearm with a one-year firearm specification and the court affirmed the gun specification, reasoning that receiving stolen property was not one of the enumerated non-enhanceable offenses in R.C. 2929.14(D)(1)(e)). The fourth assignment of error is without merit.

### c. Merging (Fifth Assignment of Error)

{¶ 55} Under the fifth assignment of error, Jones argues that the firearm specifications accompanying felonious assault and tampering with evidence should be merged because the two felonies were part of a single criminal transaction.

{¶ 56} Firearm specifications may be subject to merger under R.C. 2929.14. *State v. Sheffey*, 8th Dist. Cuyahoga No. 98944, 2013-Ohio-2463, ¶ 26. Jones cites R.C. 2929.14(B)(1)(b) (former R.C. 2929.14(D)(1)(b)) for his claim that the trial court is not permitted to impose a sentence on multiple firearm specifications for felonies "committed as part of the same act or transaction." However, Jones fails to mention that R.C. 2929.14(B)(1)(g) (former R.C. 2929.14(D)(1)(g)) provides an exception to the "same-transaction" rule. *See State v. Vanderhorst*, 8th Dist.

Cuyahoga No. 97242, 2013-Ohio-1785, ¶ 10; *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 33. R.C. 2929.14(B)(1)(g) states:

> If an offender is convicted of or pleads guilty to two or more felonies, *if one or more of those felonies* are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, *felonious assault*, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section [firearm specifications statute] in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, *in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.*

(Emphasis added.)

{¶ 57} Pursuant to the statute, although multiple firearm specifications should be merged if the felonies were committed as "part of the same act or transaction," when one of the felonies is a felony such as murder, aggravated robbery, felonious assault, or rape, the "same transaction" rule does not apply. In other words, R.C. 2929.14(B)(1)(g) permits the imposition of multiple prison terms for multiple firearm specifications if the defendant is convicted of one or more felonies such as murder, aggravated murder, or felonious assault. Here, one of the felonies Jones was convicted of was felonious assault. Therefore, the "same transaction" rule does not apply, and therefore it would be unnecessary to reach the question of whether the two felonies Jones was convicted of, felonious assault and tampering with evidence, were part of the same act or transaction. The fifth assignment of error lacks merit.

**Ineffective Assistance of Counsel**

{¶ 58} Under the sixth assignment of error, Jones claims his trial counsel provided ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, an appellant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona*, 93 Ohio St.3d 83, 105, 2001-Ohio-1292, 752 N.E.2d 937. Jones claims his trial counsel provided ineffective assistance of counsel in failing to object to hearsay and other prejudicial testimony.

{¶ 59} Hearsay, under Ohio's Rules of Evidence, is defined as an out-of-court statement offered in court to prove the truth of the matter asserted. Evid.R. 801(C). Evid.R. 802 provides that, with certain exceptions, hearsay is not admissible at trial. The analysis of hearsay requires a court to determine whether or not a statement is hearsay. If it is, the court must then determine whether any exception is applicable.

### a. Alleged Hearsay Testimony from the Investigating Officers

{¶ 60} Jones claims several officers' testimony that the suspect on Lawn Street possibly had a gun was hearsay and his counsel should have objected to their testimony. He points specifically to testimony from Officer Christopher Lozinak and Officer John Cho. The transcript reflects the following testimony from Officer Lozinak:

> Q. Were you — did you respond to this area on September 15, 2016?
> A. Yes, I did.
> Q. What was the nature of the call?
> A. Another [police] car * * * received a Code 1 assignment for a male taking his clothes off and also *possibly wielding a gun, firearm.*
> Q. What did you do when you got to the scene?
> A. * * * I tried to go in some backyards on the north side of the street, kind of establish a plank maneuver, establish a perimeter. Not sure what this man was going to do. * * * We tried to get him surrounded, so we can keep him contained. * * *

(Emphasis added.) The transcript also reflects the following testimony from Officer Cho:

> Q. What is State's Exhibit 352?
> A. It's a photo of a vehicle.
> Q. Do you recognize that vehicle?
> A. Yes.
> Q. What — how do you recognize that vehicle?
> A. That was the vehicle that was on [the] scene.
> Q. And you were referring to what scene?
> A. Over on Lawn. This is [the] vehicle that the gentleman was getting in and out of.
> Q. You personally observed him getting in and out of the vehicle?
> A. Yes.
> Q. Did you personally observe him doing anything else while you were responding?

A. I believe we were trying to get a tactical advantage. *They stated he had a gun.* I don't believe I recall if I saw the gun in his hand. My partner and I went through the yards.

(Emphasis added.)

{¶ 61} When statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay. *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). However, because the potential for abuse in admitting such statements is great, in order to be admitted, the officer's conduct to be explained should be "relevant, equivocal and contemporaneous with the statements." *State v. Blevins*, 36 Ohio App.3d 147, 521 N.E.2d 1105 (10th Dist.1987), citing 6 Wigmore, *Evidence*, Section 1772, at 267-268 (Chadbourn Rev.1976) while also meeting the standard of Evid.R. 403(A) (evidence not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury). *Id.*

{¶ 62} Our review shows the testimony from Officer Lozinak and Officer Cho regarding the suspect having a gun was part of their testimony explaining how the officers conducted themselves during the course of their investigation — in response to a dispatch call regarding a suspect potentially armed, the police tried to obtain tactical advantage as they approached the suspect at Lawn Street. The testimony meets the prescribed standard; moreover, the testimony cannot be deemed unfairly prejudicial because this is not the only evidence linking Jones with a gun — the police retrieved a gun in the vehicle Jones was in.

**b. Alleged Hearsay Testimony by Glass**

{¶ 63} Jones also claims his counsel elicited hearsay testimony from Glass, his ex-girlfriend. The record reflects that, during the defense counsel's cross-examination of Glass regarding her vehicle, she testified as follows:

Q. And do you remember telling the detective the following: That you didn't know that anyone took your car because you were taking a bath at the time and that he — speaking of Greggory Jones — came into the house, took the keys from your brother, Maurice Grey, Gregg got the keys, and drove off. After you got out of the tub, *your brother told you that Gregg took the car*; do you remember saying that to Detective Shoulders?

A. *I do not remember saying that.* I remember saying my brother let him in, and he did not know that he took the keys off the table. That's what I remember.

Q. So you're saying that Detective Shoulders lied when he put this report together?

A. I'm not saying that. Just maybe he didn't hear me right. I don't know.

Q. Do you remember telling him that you didn't call the police about the car missing because you already heard that Mr. Jones was arrested on Lawn Avenue?

A. Yes.

Q. Well, that would [have] to come at the time around noon that you talked to Greggory Jones'[s] mom?

A. Yes.

Q. But you already noticed that the keys were missing when you got out of the tub?

A. I did not notice that the keys were missing when I got out of the tub. I didn't know the keys [were] missing at all. I got a phone call out of my sleep. I was sleeping. And when I got the phone call, then I looked, I said, oh, my god, my keys are missing.

Q. Did you not just say that your brother Maurice told you —

A. That he let him in —

* * *

Q. So the part that your brother said that * * * Greggory Jones came in, took the keys and took the car, that was never your statement to the police?

A. I don't remember saying that. I was in shock, maybe I did say that.

```
* * *
Q.     Do you remember telling the police what I just said to you; is
       that a yes or no?
A.     Yes.
Q.      So you did say [to the detective] that you were in the tub, you
       didn't know that Mr. Jones came in, that your brother Maurice
       said that he took the car?
A.     Not that part.
Q.     So you remember parts and not others?
A.     I remember everything.  I just — I don't recall at all, period * * *
       that part you put in there.
Q.     That was because you were in shock?
A.     That's because I didn't say it.  I don't recall saying that at all.
```

(Emphasis added.)

{¶ 64} It appears that defense counsel may have tried to implicate Glass's brother Maurice Grey in the cross-examination of Glass and plant in the jury's minds the possibility that Grey may somehow be involved in the shooting.  Glass's testimony, however, did not turn out to be favorable to the defense.  On appeal, Jones does not complain about his counsel's trial strategy of claiming Maurice Grey as the shooter, only that Glass's testimony contained hearsay.  However, our review of the testimony does not reflect hearsay testimony from Glass.  She steadfastly denied she had told the detective that her brother told her Jones took the vehicle.  In any event, even if there was hearsay testimony about Jones taking Glass's vehicle, the admission of the testimony was not unduly prejudicial because Jones himself was observed to be exiting the vehicle when the police approached.

### c.  Purported "Bad Acts" Evidence

{¶ 65} During the cross-examination, Glass revealed that Jones had taken her vehicle without her permission on the day before the incident, she called the

police to report the theft, and Jones returned the vehicle to her immediately. During the redirect examination, Glass also revealed that she moved in with her mother because "I was in [an] abusive relationship with Gregg." Jones claims her testimony was improper "bad acts" evidence and his counsel should have objected or moved to strike the testimony.

{¶ 66} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In general, "[e]vidence that [a defendant] committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15

{¶ 67} Even if Glass's testimony were indeed "bad acts" evidence, and counsel had preserved the error for our review, the admission of the testimony was harmless error, because the evidence presented by the state contains overwhelming proof of the defendant's guilt. *State v. Dailey*, 8th Dist. Cuyahoga No. 89289, 2007-Ohio-6650, ¶ 23 ("[w]here evidence has been improperly admitted, the admission is harmless beyond a reasonable doubt if the remaining evidence alone demonstrates overwhelming proof of defendant's guilt.") As such, counsel's failure to object did not constitute an ineffective assistance of counsel.

### d. The Firearm Examiner's Testimony

{¶ 68} Jones also argues his trial counsel should have objected to Firearm Examiner Kooser's testimony during the redirect examination. In his direct examination, Kooser testified that he was able to determine that all 9 mm shell casings retrieved by the police were fired from the gun found in the vehicle, even though the gun was missing a barrel. He explained that although a "donor" barrel was used for testing, it did not affect his ability to perform the comparison analysis on the shell casings. In his redirect examination, he mentioned he had participated in a "Miami-Dade Ruger" program run by a firearm expert and he learned from the program that every firing pin on any firearm will always leave its unique mark on a shell casing, which helps identifying the source weapon from the spent shell casings. Jones argues the testimony referencing the program was inadmissible because the witness used this "self-serving anecdote" to buttress his opinion that the shell casings found were from the gun found in the vehicle.

{¶ 69} Jones's claim is without merit. The record reflects the parties had stipulated to Kooser's qualifications as an expert in firearms examination. Evid.R. 702 ("Testimony by experts") permits a witness to testify as an expert when "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Rather than a "self-serving anecdote" as characterized by Jones, Kooser's testimony fell within the permissible expert testimony regarding the expert witness's "experience,

training, or education."  Jones's counsel did not provide ineffective assistance in failing to object to the testimony.  The sixth assignment of error lacks merit.

**Maximum Term**

{¶ 70} Jones argues the trial court erred in sentencing him to a maximum term of imprisonment for tampering with evidence. This claim lacks merit.

{¶ 71} Under the current law, the trial court is no longer required to make findings before imposing a maximum sentence.  Instead, our review of a felony maximum sentence is limited to a determination of whether the maximum sentence is contrary to law.  *State v. East*, 8th Dist. Cuyahoga No. 102442, 2015-Ohio-4375; *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.  A trial court's imposition of a maximum term of imprisonment for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense and the court considers the purposes and principles of felony sentencing outlined in R.C. 2929.11 and the seriousness and recidivism factors outlined in R.C. 2929.12. *State v. Wright*, 2018-Ohio-965, 108 N.E.3d 1109, ¶ 16 (8th Dist.); *State v. West*, 8th Dist. Cuyahoga No. 105568, 2018-Ohio-956, ¶ 9, 10 (stressing a trial court's full discretion to impose the maximum sentence as long as the sentence is within the statutory range and the court considered the relevant statutory purposes and guidelines).

{¶ 72} Here, the statutory range for Jones's third-degree felony offense of tampering with evidence was 9 to 36 months and he was sentenced to the maximum term of three years (36 months), within the statutory range.  Moreover, our review

of the sentencing transcript shows that the trial court considered the statutory purposes and principles prescribed in R.C. 2929.11 as well as the seriousness and recidivism factors set forth in R.C. 2929.12. In addressing the recidivism factors, the court emphasized Jones's extensive criminal history. Jones's maximum sentence for tampering with evidence is not contrary to law. The seventh assignment of error is overruled.

{¶ 73} Judgment affirmed in part and vacated in part. Jones's conviction and sentence on the three-year firearm specification associated with tampering with evidence is vacated.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY EILEEN KILBANE, A.J., and
MARY J. BOYLE, J., CONCUR